UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATTHEW TERRION, | Case No. 5:13CV426 |
| Petitioner, | JUDGE SARA LIOI |
| v. | Magistrate Judge George J. Limbert |
| KIMBERLY CLIPPER, Warden, | |
| Respondent. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

On February 27, 2013, Petitioner, Matthew Terrion ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. He seeks relief for alleged constitutional violations that occurred during his Summit County, Ohio Court of Common Pleas convictions for two counts of murder with specifications, tampering with evidence, and domestic violence in violation of the Ohio Revised Code ("ORC"). ECF Dkt. #1[1].

On June 21, 2013, Respondent, Kimberly Clipper, Warden of Lorain Correctional Institution, in Grafton, Ohio, filed an Answer/Return of Writ. ECF Dkt. #7. On September 6, 2013, Petitioner, through counsel, filed a Traverse. ECF Dkt. #10.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

## I.  SYNOPSIS OF THE FACTS

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

By April of 2009, the relationship between Terrion and his wife, Cherilyn Terrion, had become rocky. When Mr. and Mrs. Terrion moved back to Ohio from Las Vegas, they purchased a home in Lakewood. Mr. Terrion began a business designing parts for Jeep Wranglers. That business failed and, with the added debt from the Lakewood home, the Terrions were forced to file for bankruptcy in October 2008. Mrs. Terrion began working outside the home while Mr. Terrion served as a stay-at-home dad for their two children. Around the time of the bankruptcy, the couple was forced to move out of the Lakewood home and into Mr. Terrion's parents' house. This created a strain on the marriage. The two began seeing a marriage counselor. Around April of 2009, Mrs. Terrion began spending more time outside the home. Mr. Terrion became suspicious that she was having an affair. He installed a keylogger program on her computer and discovered her MySpace and Facebook accounts, as well as a Yahoo! personal ad. The personal ad included such statements as "I am attracted to men that can take care of themselves," "a man's-man type of guy, if that helps the description," "I don't want to hold your hand and let you cry. I want to be busy holding other things for you," and "I just don't want a crybaby that needs his momma every five minutes." Her marital status was set as separated and living alone. Mr. Terrion confronted her about it and she said it was old and nothing for him to worry about. On April 1, 2009, he confronted her and asked her if she was having an affair. In response, she told him she wanted out of the marriage.

Around April 8, 2009, Mrs. Terrion moved into her own apartment in Twinsburg. On April 10, 2009, the Terrions agreed to amicably divorce. However, Mr. Terrion never read her lawyer's resolution of the marriage and refused to sign the documents. On April 13, 2009, she filed for divorce. Mr. Terrion began taking the prescription medication Zoloft. On April 19, 2009, he spoke with her on the phone and read to her a letter that he had typed. In response, she agreed to call off the divorce but wanted to remain in her apartment. Mr. Terrion was ecstatic. Things continued to go well and, on April 27, 2009, Mrs. Terrion dismissed the divorce action. On April 29, 2009, Mr. Terrion placed a pistol and silencer in a box with shoes and took it to her apartment. He testified that he was going to give her the gun and silencer as a gift because it was his favorite gun and the gesture would let her know that she was more important to him than his gun collection. After eating dinner with Mrs. Terrion he bought her a television at Walmart and installed it at her apartment. Afterwards, he used the bathroom, blew his nose and put the tissue in the trash, where he saw wadded up toilet paper and became furious. At trial on cross-examination Mr. Terrion admitted that he was rooting around in her trash can because he still did not trust her. Inside the toilet paper he found a condom wrapper.

At trial, Mr. Terrion explained that when they had used condoms in the past, Mrs. Terrion would wad them up in toilet paper before discarding them. He immediately knew that the reconciliation was a lie and that she had been with someone else. He returned to his truck and retrieved the box with the gun and silencer and set it on the bed. He showed her the condom wrapper and asked her what it was. She told him it was none of his business. He was furious and she was acting defensive. Eventually she told him to leave. He grabbed the gun out of the box; he testified that he just wanted to scare her. He further testified that she grabbed it and it fired. He admitted that he shot her pointblank in the top of the head and killed her.

> Mr. Terrion then attempted to delay the investigation by taking the shell casing, returning to his parents' home, cleaning himself and the weapon, removing the barrel that attaches to the silencer and reattaching the factory barrel. He also hid the shell casing, keys that he took from Mrs. Terrion's apartment, some ammunition, and the condom wrapper in plastic bags in the attic. When his parents left for work the next day, Mr. Terrion, a former police officer, put on a bullet-proof vest, barricaded the doors and windows, and positioned numerous firearms throughout the house in preparation for a standoff. He then ingested any pills that he could find. Eventually, he was arrested without further violence.

ECF Dkt. #7-1 at 100-102.

## II. PROCEDURAL HISTORY

### A. State Trial Court

In its May 2009 term, the Summit County, Ohio Grand Jury indicted Petitioner on: murder in violation of ORC § 2903.02(A), a special felony, with a firearm specification, criminal forfeiture specification and firearm muffler or silence specification under ORC §§ 2941.145, 2941.1417 and 2941.144, respectively; murder in violation of ORC § 2903.02(B), a special felony, with a firearm specification, criminal forfeiture specification and firearm muffler or silence specification under ORC §§ 2941.145, 2941.1417 and 2941.144, respectively; tampering with evidence in violation of ORC § 2921.12(A)(1); and domestic violence, in violation of ORC § 2919.25(A). ECF Dkt. #7-1 at 3.

On March 8, 2010, Petitioner, through counsel, filed a motion for jury instructions on Voluntary Manslaughter and Involuntary Manslaughter as inferior degreed offenses of purposeful Murder and Felony Murder as he had been charged in the indictment. ECF Dkt. #7-1 at 6.

On March 9, 2010, a jury trial was held and on April 1, 2010, the trial court issued a journal entry indicating that the jury returned a verdict on March 12, 2010 finding Petitioner guilty of: murder as charged in the first count of the indictment, with the firearm and silencer specifications; murder as described in the second count of the indictment, with the firearm and silencer specifications; tampering with evidence; and domestic violence. ECF Dkt. #7-1 at 34.

On April 1, 2010, the trial court sentenced Petitioner to an aggregate term of 21 years to life imprisonment for his convictions. ECF Dkt. #7-1 at 35.

### B. **Direct Appeal**

On April 27, 2010, Petitioner, through different counsel, filed a notice of appeal and asserted the following assignments of error:

> ASSIGNMENT OF ERROR ONE
>
> THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING HIS REQUESTS FOR SPECIFIC JURY INSTRUCTIONS ON INFERIOR DEGREE OFFENSES TO MURDER.
>
> ASSIGNMENT OF ERROR TWO
>
> THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS IN DENYING HIM THE RIGHT TO PRESENT THE TESTIMONY OF ANDREW GOSELIN, AND IN DENYING APPELLANT'S MOTION FOR MISTRIAL AS A RESULT.

ECF Dkt. #7-1 at 37-59.

On August 3, 2011, the Ohio appellate court affirmed the trial court's judgment and sentence, overruling each of Petitioner's assignments of error. ECF Dkt. #7-1 at 100-111.

### C. **Supreme Court of Ohio**

On September 19, 2011, Petitioner, through counsel, filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #7-1 at 112. In his memorandum in support of jurisdiction, Petitioner asserted the following proposition of law:

> PROPOSITION OF LAW:
>
> A TRIAL COURT DENIES A DEFENDANT CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR TRAIL WHEN IT DENIES A REQUEST FOR SPECIFIC JURY INSTRUCTIONS ON INFERIOR DEGREE OFFENSES TO MURDER, WHERE THERE WAS SUBSTANTIAL EVIDENCE PRESENTED TO SUPPORT SUCH INSTRUCTIONS.

ECF Dkt. #7-1 at 115. On November 30, 2011, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Id.* at 141.

### III. **28 U.S.C. § 2254 PETITION**

On February 27, 2013, Petitioner, through new counsel, filed the instant petition for a writ of federal habeas corpus. ECF Dkt. #1. Petitioner raises the following grounds for relief in that petition:

> I. Petitioner's constitutional right to due process and a fair trial pursuant to Sixth and Fourteenth Amendments was violated when the State Court refused to permit the jury to consider the lesser offense[s] of voluntary and involuntary manslaughter.
>
> Supporting Facts:
>
> The Petitioner made timely requests that the Court charge the jury on lesser offenses as to both counts of murder. As to Count 1, purposeful murder, he requested voluntary manslaughter. As to Count 2, murder during commission of felonious assault, he requested a charge of involuntary manslaughter.
>
> II. The state court denied the petitioner due process of law pursuant to the Sixth and Fourteenth Amendment[s] when it made an unreasonable determination of fact and refused to charge on lesser offenses, thereby depriving him of the right to have the jury determine the ultimate facts of the case.
>
> Supporting Facts:
>
> The trial court unreasonably determined that there was not sufficient evidence to permit the lesser offenses to be submitted to the jury.

ECF Dkt. #1 at 5-8. On June 21, 2013, Respondent filed an Answer/Return of Writ. ECF Dkt. #7. On September 6, 2013, Petitioner filed a Traverse. ECF Dkt. #10.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not currently at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.

28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other*

-6-

*grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim

anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

## V. **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

    1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

  D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

  E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

  Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

-10-

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI. ANALYSIS

### A. PROCEDURAL DEFAULT

Respondent asserts that Petitioner has procedurally defaulted his grounds for relief because he failed to fairly present them as federal constitutional claims to the state courts and is thus barred from raising them before this Court. ECF Dkt. #7 at 11-13.

The undersigned notes that Petitioner did not cite to any federal law in his brief before the Ohio appellate court. ECF Dkt. #7-1 at 42-56. Nor did the Ohio appellate court cite to any federal law in determining the issue. *Id.* at 100-110. While Petitioner cited to two federal cases and vaguely referred to "Constitutional Due Process" in his memorandum in support of jurisdiction before the Ohio Supreme Court, he concentrated on the state caselaw relied upon by the Ohio appellate court in making its decision. *Id.* at 113-126.

A federal ground for relief is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004). An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 2012 WL 3854787, at *6, citing *Williams*, 380 F.3d at 967. When "a petitioner has failed to fairly present federal claims to the state courts,

-11-

and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.2009). As explained above, in order to avoid an exhaustion and subsequent procedural default, a petitioner must present his grounds for relief "to the state courts under the same theory in which it is later presented in federal court." *Wong*, 142 F.3d at 322. General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681, citing *Petrucelli*, 735 F.2d 684, 688-89 (2d Cir. 1984).

Petitioner in this case fails to fairly and fully present his grounds for relief as federal constitutional errors to the Ohio appellate court. Accordingly, he has not exhausted his grounds for relief. Further, he is barred from raising these claims before the Ohio courts as his time for filing a post-conviction petition before the Ohio court has elapsed and the issue would have otherwise been subject to dismissal because it could have been raised on direct appeal. *See* Ohio Rev. Code § 2953.23; *Durr v. Mitchell*, 487 F.3d 423, 434 (6th Cir. 2007). In addition, Petitioner fails to offer cause for not fairly presenting these claims as federal constitutional claims. Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted both of his grounds for relief.

The Court can still consider Petitioner's constitutional arguments if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would

-12-

have convicted him in light of the new evidence." *Id.* Here, Petitioner has produced no new evidence to carry this burden and he makes no claims of actual innocence.

### B. COGNIZABILITY

Respondent also contends that neither of Petitioner's grounds for relief are cognizable in federal habeas corpus. ECF Dkt. #7 at 9-11. For the following reasons, the undersigned agrees and recommends that the Court find that Petitioner's grounds for relief are not cognizable.

A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted).

Generally, errors in jury instructions are not cognizable in federal habeas corpus unless they deprive a defendant of a fundamentally fair trial or of due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *see also Estelle*, 502 U.S. at 72. The question before this Court is not whether the challenged jury instruction is "allegedly incorrect under state law." *Estelle*, 502 U.S. at 71-72. Rather, it is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)) (additional citations omitted). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp*, 414 U.S. at 147). Further, the Court must be mindful that the "'category of infractions that violate 'fundamental fairness' [is defined] very narrowly.'" *Hardy v. Beightler*, No. 1:08CV161, 2011 WL 1230156, at *25(N.D. Ohio, Mar. 30, 2011), unpublished, quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law

-13-

instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71–72.

Here, Petitioner cited to only Ohio law in his brief before the Ohio appellate court. ECF Dkt. #7-1 at 39-55. He asserted that the trial court violated Ohio caselaw in not instructing the jury on the inferior degree offenses to murder. *Id.* at 49-51. The Ohio appellate court decided Petitioner's appeal based upon Ohio law as well, discussing Ohio cases and statutory law in determining that insufficient provocation by the victim was presented in order to warrant such instructions. ECF Dkt. #7-1 at 103-107.

Thus, unless Petitioner can show that the trial court's failure to instruct the jury on voluntary and involuntary manslaughter falls into the narrow category of cases warranting the finding of a fundamental miscarriage of justice, this Court should decline to review his grounds for relief as noncognizable. The undersigned reviews the fundamental miscarriage of justice issue in conjunction with the merits review *infra*.

### C.    MERITS REVIEW

The undersigned notes that even though Petitioner asserted the failure to instruct on both voluntary and involuntary manslaughter as constitutional errors in his grounds for relief before this Court, he fails to present any argument concerning the lack of an involuntary manslaughter instruction. Petitioner instead focused his appellate arguments and focuses his argument before this Court on the issue of the lack of a voluntary manslaughter instruction. Neither party addresses the involuntary manslaughter issue before this Court and the Ohio appellate court did not address the involuntary manslaughter instruction either.

Nevertheless, even if Petitioner's grounds for relief were not procedurally defaulted and were cognizable, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. The undersigned further recommends that the Court find that the trial court's failure to instruct the jury on voluntary and involuntary manslaughter does not fall into the narrow class of cases warranting a finding of a fundamental miscarriage of justice.

Although voluntary manslaughter is an inferior degree of murder and not a lesser included offense of murder under Ohio law, the Ohio Supreme Court has held that the test for determining whether a jury instruction on voluntary manslaughter is warranted in a murder case is the same test as when an instruction on a lesser included offense, like involuntary manslaughter, is sought. *See State v. Shane*, 63 Ohio St.3d 630, 631, 59 N.E.2d 272 (1992), citing *State v. Tyler*, 50 Ohio St.3d 24, 37, 553 N.E.2d 576 (1990). Therefore, the manslaughter instructions are warranted when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for those crimes. *State v. Conway*, 108 Ohio St.3d 214, 238, 842 N.E.2d 996 (2006), citing *Shane*, 63 Ohio St.3d at 632.

Ohio Revised Code sections 2903.02(A) and (B), under which Petitioner was indicted, provide:

> (A) "No person shall purposely cause the death of another * * *"
>
> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

Ohio Rev. Code § 2903.02(A)(B). "Purposely," as used above is defined in Ohio Revised Code section 2901.22(A):

> (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Ohio Rev. Code § 2901.22(A). Sections 2903.03 and 2903.04 as identified in Subsection B of Ohio Revised Code section 2903.02 refer to voluntary manslaughter and involuntary manslaughter, respectively.

Voluntary manslaughter is defined in Ohio Revised Code § 2903.03:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person to deadly force, shall knowingly cause the death of another.

The relevant portion of involuntary manslaughter is defined in Ohio Revised Code § 2903.04:

> (A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

The Ohio Supreme Court has held that a defendant's intent to kill need not be proven by direct testimony. *See State v. Eley*, 77 Ohio St.3d 174, 180 (1996), citing *State v. Lott*, 51 Ohio St.3d 160 (1990). "Instead, an intent to kill 'may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.'" *Eley*, 77 Ohio St.3d at 180, quoting *State v. Robinson* (1954), 161 Ohio St. 213, paragraph five of the syllabus.

In order to reduce a charge from murder to voluntary manslaughter, "(1) There must have been a reasonable provocation. (2) The defendant must have been in fact provoked. (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. And (4), the defendant must not in fact have cooled off during that interval." *Shane*, 63 Ohio St.3d at 634, fn.1, quoting 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10. Provocation "* * *must be reasonably sufficient to incite the defendant to use deadly force." *Shane*, 63 Ohio St.3d at 635. For a provocation to be reasonably sufficient, "* * *it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.*

Before a trial court may instruct the jury on voluntary manslaughter in a murder case, the court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Conway,* 108 Ohio St.3d at 238-239, quoting *Shane*, 63 Ohio St.3d at paragraph one of syllabus. In determining whether evidence of reasonably sufficient provocation was presented to warrant a voluntary manslaughter instruction under Ohio law, the trial court applies an objective standard: "[f]or provocation to be reasonably

-16-

sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane*, 63 Ohio St.3d at 635. If this prong is met, then the "inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the '* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *' must be considered." *Id*. at 634, quoting *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph five of the syllabus.

In the instant case, the Ohio appellate court reviewed Ohio law on voluntary manslaughter and involuntary manslaughter and the determinations that a trial court must make before instructing the jury on such charges. The appellate court held that even though it was not a lesser included offense, Ohio law requires a judge to instruct a jury on voluntary manslaughter when the evidence presented would "reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." ECF Dkt. #7-1 at 104, quoting *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). The court went on to additionally provide that a trial court must also determine whether "evidence of reasonably sufficient provocation occasioned by the victim has been presented" in order to warrant a voluntary manslaughter instruction. ECF Dkt. #7-1 at 104, quoting *Shane*, 63 Ohio St.3d at paragraph one of the syllabus.

The Ohio appellate court compared the provocation situations that the Ohio Supreme Court found appropriate for voluntary manslaughter instructions, which included "assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery[.]" ECF Dkt. #7-1 at 105, quoting *Shane*, 63 Ohio St.3d at 635. The Ohio appellate court discussed the Ohio Supreme Court's comparison of the facts in *Shane* to the facts in Petitioner's case. The appellate court noted that in *Shane*, the defendant awakened his fiancee and repeatedly asked her about her infidelity and she denied the accusations. *Id.* She thereafter admitted her infidelity to him and he lost control, strangling her to death over a course of five minutes. *Id*. The Ohio appellate court noted that the Ohio Supreme Court compared that situation to one where there is a gunshot that occurs quickly and can be immediately regretted and the Ohio Supreme Court found that under the circumstances in

-17-

*Shane*, no reasonable person would have been sufficiently provoked by the victim's actions. ECF Dkt. #7-1 at 105-106, citing *Shane*, 63 Ohio St.3d at 637.

The Ohio appellate court thereafter compared the facts of Petitioner's case to one of its own decisions, *State v. Nelson,* No. 20365, 2001 WL 651542 (9th Dist. Ohio App. Ct. June 3, 2001), where Nelson's wife told him that she was having an affair with a co-worker and the co-worker then bragged to Nelson that he had slept with his wife and told him that "you won't forget it and neither will she." *Id*. Nelson went to the co-worker's place of work the next day and killed him with a shotgun and scalped him with a knife. *Id*. The Ohio appellate court discussed *Shane*, first noting that "words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Id*. at *1, quoting *Shane*, 63 Ohio St.3d at paragraph two of the syllabus. The *Nelson* Court held that spousal confessions of adultery are not among the few situations as a matter of law where some combination of words alone could produce reasonably sufficient provocation. *Id*. The Ohio appellate court found that pursuant to *Shane*, the timing of the confession of adultery and the co-worker's remarks were irrelevant to the provocation analysis as it concluded that "the disclosure of adultery alone by a disaffected spouse does not operate to partially excuse the killing of her paramour." *Id.* The *Nelson* Court concluded that it need not reach the issue of whether the defendant had the opportunity to cool down since insufficient evidence of provocation required as a matter of law that the trial court refuse to instruct the jury on voluntary manslaughter since no reasonable jury would decide that the actor was reasonably provoked by the victim. *Id*.

In affirming the trial court's refusal to instruct the jury on voluntary manslaughter in Petitioner's case, the Ohio appellate court compared it to *Nelson* and *Shane*. The Ohio appellate court found that the circumstances of *Nelson* constituted much more egregious action and stronger provocation by the victim than the instant case because in *Nelson*, both the spouse and the co-worker admitted to the adultery and the victim co-worker even taunted the defendant about the infidelity. ECF Dkt. #7-1 at 107. Yet the Ohio appellate court in *Nelson* found that even that was not reasonably sufficient provocation and upheld the trial court's refusal to instruct the jury on voluntary manslaughter. ECF Dkt. #7-1 at 105-106. The Ohio appellate court found Petitioner's case

-18-

analogous to *Shane* as in both cases, the defendants did not trust their wives and sought to confirm their infidelity which created much of their own anger. *Id*. at 106. The Ohio appellate court upheld the trial court's finding that Petitioner was not entitled to a voluntary manslaughter instruction due to insufficient provocation because Mrs. Terrion's conduct of telling her husband that her activities were none of his business after he found a condom wrapper hidden in toilet paper in her trash can did not constitute a confession or sufficient provocation by Mrs. Terrion to warrant a voluntary manslaughter instruction. *Id*.

The undersigned recommends that the Court find that the Ohio appellate court reasonably concluded that the voluntary manslaughter jury instruction was not warranted because the evidence did not show sufficiently reasonable provocation on the part of Mrs. Terrion. Ohio law required Petitioner to show that Mrs. Terrion's conduct constituted reasonably sufficient provocation to arouse his passions as an ordinary person beyond the power of his control. Here, as pointed out by the Ohio appellate court, Petitioner suspected a month prior to the shooting that Mrs. Terrion was having an affair. ECF Dkt. # 7-1 at 101. Mrs. Terrion thereafter told Petitioner that she wanted out of the marriage. *Id*. Mrs. Terrion moved into her own apartment and they agreed to amicably divorce. *Id*. Subsequently however, she agreed to call off the divorce but wanted to stay in her apartment. Mrs. Terrion dismissed her divorce action on April 27, 2009. *Id*.

On April 29, 2009, Petitioner put a pistol and silencer in a box to take to Mrs. Terrion's apartment and he testified that he was going to give her the gun and silencer to show her that she was more important to him than his gun collection. ECF Dkt. #7-1 at 101. The couple ate dinner and he then bought her a television and installed it at her apartment. *Id*. He then used the bathroom in the apartment and after blowing his nose and placing the tissue in the trash can, he began rooting through the trash can and saw wadded up toilet paper with a condom wrapper in it and he became furious. ECF Dkt. #7-1 at 102. He then went out of the apartment to his truck and got the box with the gun and silencer and set it on the bed. *Id.* He showed Mrs. Terrion the condom wrapper and asked her about it and she told him it was none of his business and she asked him to leave. *Id*. He then pulled the gun out of the box and testified that he just wanted to scare her, but she grabbed the gun and it

-19-

fired, shooting Mrs. Terrion point-blank in the top of the head. *Id.*

Mrs. Terrion's words, even coupled with Petitioner's discovery of the condom wrapper which was not conduct occasioned by the victim, does not constitute sufficient provocation needed to justify a voluntary manslaughter instruction. Thus, the undersigned recommends that the Ohio appellate court's determination on this issue was not contrary to or an unreasonable application of law. In addition, Petitioner has not shown that a fundamental miscarriage of justice occurred in the Ohio appellate court's interpretation and application of Ohio law such that his procedural default is excused or to justify considering his noncognizable grounds for relief.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find that Petitioner's grounds for relief are procedurally defaulted and are not cognizable in federal habeas corpus. Further, should the Court find otherwise, the undersigned alternatively recommends that the Court find that the Ohio Appellate Court's determination was not contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States.

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice. ECF Dkt. #1.


DATE: June 26, 2014         */s/ George J. Limbert*
                                   GEORGE J. LIMBERT
                                   UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).